IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICAH JARED SMITH, | ) |
|                 Petitioner, | ) |
| v. | ) C.A. No. 22-99 (MN) |
| PHIL PARKER, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | ) |
|                 Respondents.[1] | ) |

**MEMORANDUM OPINION**

Micah Jared Smith – *Pro se* Petitioner.

Andrew J. Vella, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE – Attorney for Respondents.

November 21, 2024
Wilmington, Delaware

---

[1] The Court has substituted Warden Phil Parker for former Warden Kolawole Akinbayo, an original party to the case. *See* Fed. R. Civ. P. 25(d).

**NOREIKA, U.S. DISTRICT JUDGE**

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Micah Jared Smith ("Petitioner"). (D.I. 1; D.I. 5). The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 10; D.I. 16). For the reasons discussed, the Court will deny the Petition.

## I. BACKGROUND

The evidence at trial showed that [Petitioner], who did contract attorney work in D.C., lived in the basement bedroom of his brother's house for about ten years. [Petitioner] often babysat his niece ("the Child") and two nephews. On April 24, 2015, the Child, who was nine years old, and her mother ("the Mother") were searching the Internet for family pictures. After they searched for the Child's name and some pictures of scantily clad women appeared, the Child became upset at the thought that [Petitioner] may have posted photographs of her without a shirt. The Child told the Mother that [Petitioner] would hold her down, kiss her chest, and touch her private parts.

After the Child fell asleep, the Mother, who had long been displeased with [Petitioner's] presence in the house, confronted [Petitioner]. She ordered [Petitioner] to leave the house, which he did. The Mother's sons overheard the confrontation. The Mother then called the Division of Family Services to report [Petitioner's] behavior.

On May 4, 2015, a forensic interviewer at the Children's Advocacy Center ("CAC") interviewed the Child. The Child said something bad happened, but refused to talk about it. An ongoing police investigation was closed. The Mother feared that [Petitioner] would file a civil lawsuit against her and his brother.

The Child received counseling. As part of her counseling, the Child was instructed to tell the Mother what happened to her. In October 2015, the Child told the Mother that [Petitioner] would ask her if she wanted to play Go Fish, and even if she said no, he would grab her and take her downstairs to his bedroom. The Child said that [Petitioner] would hold her down, touch her with his penis, have her touch his penis, and "pee" on her. The Mother contacted the police officer who had previously worked on the case. On November 16, 2015, the Child had a second interview at the CAC. During this

interview, the Child described how [Petitioner] had touched her. She said he started touching her when she was eight or about to turn eight.

At trial, the Child testified that [Petitioner] would take her to his bedroom and would touch her in places she did not like, including "down there" and her chest. She said sometimes he put her hand on his private and would "pee" on her hand. She would wipe her hand on the carpet or the bedspread. The Child testified that [Petitioner] would touch her every few days after she came home from school and before her parents got home. She said this was still happening when she first told the Mother in May 2015. Video recordings of the CAC interviews were played at the trial.

The younger of the Child's two older brothers testified that he was often in the basement watching television or playing video games when the Child would go into [Petitioner's] bedroom to play card games with [Petitioner]. Sometimes the bedroom door was closed. He recalled the Child sometimes saying she did not want to go into [Petitioner's] bedroom. The Child's oldest brother testified that he noticed the Child spending time with [Petitioner] in his bedroom when he was fifteen and the Child was eight.

After the Child's second CAC interview, the police collected potential evidence from the basement and [Petitioner's] bedroom, including a bedspread. Testing of the bedspread revealed DNA profiles, but [Petitioner] was excluded as a contributor. No seminal fluid was detected on the carpet. Between [Petitioner] moving out and the police collecting evidence from the basement, the family cleaned [Petitioner's] room, including the bed linens, the Child's oldest brother had a party in the basement and used [Petitioner's] room, and the family did additional clean-up with a shop vacuum and carpet shampoo after a pipe in the basement ceiling leaked.

A defense expert witness testified about best practices for forensic interviews of children and the risk of poor interview techniques leading to false memories. This witness criticized certain questions in the second CAC interview. The CAC interviewer testified that she followed the interview protocol used at the CAC.

[Petitioner's] mother testified that, in January 2014, the Mother told her that she hated [Petitioner] and wanted him out of her house. After [Petitioner's] mother suggested the Mother talk to her husband [Petitioner's] brother about that, the Mother said he would not get involved, but she could. According to [Petitioner's] mother, the Child would shut the door to [Petitioner's] bedroom because her

3

> brothers' video games were too loud. [Petitioner's] mother also testified that she believed [Petitioner] had a good, healthy relationship with the Child.
>
> [Petitioner] testified that he never touched the Child in a sexual manner. He said sometimes the Child would come downstairs to his room and ask to play cards. Sometimes he or the Child would shut the door because his nephews were playing loud video games. He lived in his brother's basement to pay off his student loans and save money.

*Smith v. State*, 186 A.3d 1239 (Table), 2018 WL 2427594, at*1 (Del. May 29, 2018).

In May 2017, a Delaware Superior Court jury found Petitioner guilty of continuous sexual abuse of a child, second degree sexual abuse of a child by a person in a position of trust, authority, or supervision, and three counts of first degree unlawful sexual contact. (D.I. 11-5 at 105-110; *Smith*, 2018 WL 2427594, at *1). The jury found Petitioner not guilty of one count of first degree unlawful sexual contact. (D.I. 11-5 at 107; *Smith*, 2018 WL 2427594, at *1).

In August 2017, the Superior Court sentenced Petitioner as follows: (1) for continuous sexual abuse to a child, to 25 years of Level V incarceration, with credit for 243 days previously served, suspended after six years for decreasing levels of supervision; (2) for second degree sexual abuse of a child by a person in a position of trust, authority, or supervision, to eight years at Level V incarceration, suspended after one year for three years of Level III probation; and (3) for each count of first degree unlawful sexual contact, to eight years of Level V incarceration, suspended after one year for three years of Level III probation. (D.I. 11-5 at 148-153; *see Smith*, 2018 WL 2427594, at *1).

Petitioner appealed. Newly appointed appellate counsel filed a brief and motion to withdraw under Delaware Supreme Court Rule 26(c), stating that there were arguably no appealable issues, and presented the Delaware Supreme Court with Petitioner's multiple points for consideration. (D.I. 11-2 at 1-16, 24-33; *see Smith*, 2018 WL 2427594, at *2). The Delaware

Supreme Court affirmed Petitioner's convictions and sentences on May 29, 2018. *See Smith,* 2018 WL 2427594, at *6.

On June 4, 2018, Petitioner field a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 11-1 at Entry No. 136). The Superior Court appointed postconviction counsel to represent Petitioner. (D.I. 11-1 at Entry Nos 139, 145). On May 20, 2019, appointed postconviction counsel filed a motion to withdraw as counsel. (D.I. 11-1 at Entry 151). On March 18, 2020, the Superior Court denied Petitioner's sole *pro se* claim in his Rule 61 motion and granted postconviction counsel's motion to withdraw. (D.I. 11-1 at Entry 166; *see State v. Smith*, 2020 WL 1287762, at *8 (Del. Super. Ct. Mar. 16, 2020)). The Delaware Supreme Court affirmed that decision on February 15, 2021. *See Smith v. State*, 247 A.3d 687 (Table), 2021 WL 567703, at *2 (Del. Feb. 15, 2021).

On December 22, 2022, Petitioner filed a second Rule 61 motion. *See State v. Smith*, 2024 WL 1907282, at *4 (Del. Super. Ct. Apr. 30, 2024). The Superior Court denied the Rule 61 motion as untimely under Rule 61(i)(1) and as second or subsequent under Rule 61(i)(2), (d)(2). *See id.* at *4-*6. It appears that Petitioner did not appeal that decision.

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure

that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused, and the claims treated as "technically exhausted", if state procedural rules preclude him from seeking further relief in state

6

courts. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Although treated as technically exhausted, such claims are procedurally defaulted for federal habeas purposes. *See Coleman*, 501 U.S. at 749 (1991); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in

extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004); *see also Reeves v. Fayette SCI*, 897 F.3d 154, 157 (3d Cir. 2018).

### C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).[2] Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

---

[2] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*. In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

When performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). State court factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

### III. DISCUSSION

Petitioner's timely filed Petition asserts the following seven Claims for relief: (1) there was insufficient evidence to support his convictions (D.I. 1 at 14; D.I. 5 at 6); (2) the Superior Court

9

erred by not giving an alibi instruction (D.I. 1 at 7; D.I. 5 at 9); (3) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose the Mother's notes from the Child's October 31, 2015 forensic interview (D.I. 1 at 8; D.I. 5 at 11); (4) the Mother had a conflict of interest and should not have conducted the forensic interviews of the Child in April and October 2015, because she was both the Child's mother and a licensed psychologist (D.I. 1 at 10; D.I. 5 at 13); (5) the Superior Court erred by not *sua sponte* providing a curative instruction when, in response to a question, the Mother stated that Petitioner was in jail (D.I. 5 at 15); (6) the Superior Court violated Petitioner's constitutional rights by not holding a pre-trial "taint hearing" (D.I. 1 at 12; D.I. 5 at 17); and (7) trial counsel provided ineffective assistance by not objecting when the Mother testified that Petitioner had been in jail (D.I. 1 at 5; D.I. 5 at 19-20).

### A. Claims One through Six: Procedurally Barred

Petitioner presented the arguments in Claims One, Two, Three, Four, Five, and Six to the Delaware Supreme Court on direct appeal, without having first presented them to the trial court. Consequently, the Delaware Supreme Court reviewed the arguments for plain error under Delaware Supreme Court Rule 8 and denied relief. *See Smith*, 2018 WL 2427594, at *3-6.

It is well-settled that Delaware Supreme Court Rule 8 constitutes an independent and adequate state ground precluding federal habeas review absent a showing of cause for the default and prejudice resulting therefrom, or absent a showing that a miscarriage of justice will occur if the claims are not reviewed. *See Campbell v. Burris*, 515 F.3d 172, 179-82 (3d Cir. 2008). By denying Claims One through, Six under the plain error standard, the Delaware Supreme Court plainly stated that its decision rested on state law grounds and that it was enforcing Petitioner's

10

procedural default.³  Thus, the Court cannot review the merits of Claims One, Two, Three, Four, Five, and Six absent a showing of cause and prejudice, or a miscarriage of justice.

Petitioner asserts trial counsel's ineffective assistance ("IATC") as cause for his default of all six Claims.  Ineffective assistance provided by trial counsel can constitute cause for a procedural default if that particular ineffective assistance allegation was presented to the state courts as an independent claim and it was determined that counsel's error amounted to constitutionally ineffective assistance.  *See Murray*, 477 U.S. at 488–89.  Trial counsel's ineffective assistance cannot constitute cause if the IATC claim itself is procedurally defaulted.  *See Edwards v. Carpenter*, 529 U.S. 446, 451–54 (2000).

Here, Petitioner's Rule 61 motion and subsequent post-conviction appeal did not present an IATC argument concerning trial counsel's failure to preserve the arguments in Claims One through Six.  Therefore, this particular IATC allegation is defaulted and cannot constitute cause for Petitioner's default of Claims One through Six.

Citing *Martinez v. Ryan*, 566 U.S. 1 (2012), Petitioner attempts to establish cause for his procedurally defaulted IATC allegation – in order to establish cause for his default of Claims One through Six – by blaming post-conviction counsel for not presenting in his Rule 61 motion the issue of trial counsel's failure to raise the arguments in Claims One through Six to the trial court. (D.I. 16 at 20-21).  Stated another way, Petitioner argues that *Martinez* applies to the defaulted IATC allegation he asserts as "cause" for his failure to raise the substantive arguments in Claims One through Six.

---

3 Petitioner asserts that Claim One through Six are not procedurally defaulted because the Delaware Supreme Court reviewed the Claims on their merits despite also reviewing them for plain error.  (D.I. 16 at 13-15).  Petitioner is mistaken; the Delaware Supreme Court explicitly reviewed each of the six Claims for plain error.  *See Smith*, 2018 WL 2427594, at *3-*6.

Petitioner's argument is unavailing. A petitioner can establish cause for an independent but defaulted IATC claim under *Martinez* by demonstrating that the post-conviction attorney in his initial-review collateral proceeding was ineffective under the standards established in *Strickland v. Washington*, 466 U.S. 668 (1984), that the underlying IATC claim is substantial, and that the petitioner was prejudiced. *See Martinez,* 566 U.S. at 9-10, 16-17. Yet, the Court has not found a federal court opinion extending *Martinez* to a situation where the ineffective assistance of counsel claim is the excuse for the procedural default of a substantive constitutional claim ("ineffectiveness-as-cause-claim") rather than the base claim itself.[4] *See Zagorski v. Mays*, 2018 WL 4352705, at *5 (M.D. Tenn. Sept. 12, 2018) (collecting cases).

In the absence of cause, the Court need not address the issue of prejudice. Petitioner also has not satisfied the miscarriage of justice exception to the procedural default doctrine, because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claims One, Two, Three, Four, Five, and Six as procedurally barred from federal habeas review.

**B.     Claim Seven: Ineffective Assistance of Counsel**

During Petitioner's trial, the State was attempting to establish when various events had occurred through the Mother's testimony, and asked if the Mother could estimate when the Child visited her paternal grandmother in California after Petitioner had ceased living in the Child's

---

[4]     Even if the Court could address this "layered" ineffectiveness-as-cause-for-default argument under *Martinez*, the Court would conclude that Petitioner has not established cause. After post-conviction counsel moved to withdraw from representing Petitioner in his initial Rule 61 proceeding, Petitioner was permitted to submit his own claims. (D.I. 11-3 at Entry No. 155). Petitioner, however, did not present Claims One through Six to be included in his Rule 61 motion, nor did he present an argument that trial counsel was ineffective for failing to raise the issues in Claims One through Six during his trial. (D.I. 11-14). In other words, *Martinez* would not provide a method for establishing cause because the instant default occurred as a result of Petitioner's failure to raise the issue of trial counsel's ineffectiveness for not preserving Claims One through Six, not because of post-conviction counsel's failure.

home.  While attempting to recall the timeline, the Mother stated that Petitioner was in prison at the time of the California visit ("the Jail Comment").  Trial counsel did not object to the Mother's reference to Petitioner being in jail.  Instead, trial counsel addressed the Jail Comment on cross-examination by asking the Mother whether Petitioner "was in jail because he got arrested because of these charges, not for some other reason." (D.I. 11-19 at 21).  The Mother responded, "Correct." (*Id.*).

In Claim Seven, Petitioner contends that trial counsel provided ineffective assistance by addressing the Jail Comment through cross-examination, because he believes trial counsel should have objected to the comment and have requested a curative instruction.  Petitioner presented Claim Seven to the Superior Court in his Rule 61 motion and appealed the Superior Court's denial of the Claim to the Delaware Supreme Court.  The Delaware Supreme Court rejected Claim Seven on the merits.  Given these circumstances, Petitioner will only be entitled to federal habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of trial counsel claims is the two-pronged standard enunciated by *Strickland* and its progeny.  *See Wiggins v. Smith*, 539 U.S. 510 (2003); *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004).  Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance.  *Strickland*, 466 U.S. at 688.  Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at

694.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

A petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987).  A court can choose to address the prejudice prong before the deficient performance prong and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 698.  Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).  In this case, the Delaware Supreme Court decision was not contrary to clearly established federal law because that court correctly identified the *Strickland* standard applicable to Claim Seven.  *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case.  When performing the second prong of the § 2254(d)(1) inquiry, the Court must review the Delaware Supreme Court's decision with respect

to Petitioner's ineffective assistance of counsel claim through a "doubly deferential" lens.[5] *See Richter*, 562 U.S. at 105. Notably, when § 2254(d)(1) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id*. And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 101.

The Delaware Supreme Court rejected Claim Seven on the merits, explaining:

> After careful consideration of the entire record—including trial counsel's affidavit wherein he expressed his concern about drawing additional attention to the Jail Comment by objecting to it—we find it evident that the Superior Court correctly concluded that trial counsel's performance was objectively reasonable. That is, counsel made a reasonable strategic decision to cross-examine the Mother about the Jail Comment instead of objecting to the Jail Comment, moving to strike it, and requesting a curative instruction about it. We also agree that the Superior Court rightly decided that Smith has failed to show that trial counsel's allegedly deficient performance prejudiced the trial outcome. Although [Petitioner] makes a conclusory argument that trial counsel's performance resulted in prejudice, he does not even suggest that the outcome of the trial would have been different if—as he alleges counsel's performance enabled it to do—the jury had speculated that he had previously been

---

[5] As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

15

> convicted of or pled guilty to the Sex Charges. In short, we agree with the Superior Court that [Petitioner] has failed to satisfy either prong of the ineffective-assistance-of-counsel analysis. To the contrary, trial counsel's performance was objectively reasonable, and any alleged professional shortcoming did not affect the trial outcome.

*Smith v. State,* 247 A.3d 687 (Table), 2021 WL 567703, at *2 (Del. Feb. 15, 2021).

After reviewing the record, the Court concludes the Delaware Supreme Court did not unreasonably applied *Strickland* in denying Claim Seven. As trial counsel explains in his Rule 61 affidavit, he had two options for dealing with the Jail Comment. He could have objected, thereby risking the opportunity to draw further attention to the statement in question and increasing the risk that the Jail Comment might linger in the juror's minds. (D.I. 11-11 at 11-12). Or, he could have addressed the Comment on cross-examination, attempting to clarify that Petitioner was only in custody on the pending charges. (*Id*. at 12). According to trial counsel, he considered the "pros and cons of the options" and decided to "immediately defuse the bomb of speculation" on cross-examination as the "lesser of the evils." (*Id*.).

"[D]ecisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so." *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005) (cleaned up). Trial counsel thoroughly considered the options for dealing with the Jail Comment, and Petitioner has not shown that trial counsel's failure to object to the Jail Comment and request a curative instruction – which would have drawn attention to the Comment – was deficient rather than strategic. Thus, trial counsel's tactical decision falls within the wide range of professionally reasonable conduct under *Strickland*. *See Strickland*, 466 U.S. at 681 ("If counsel conducts such substantial investigations, the strategic choices mad as a result 'will seldom if ever' be found wanting. Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed

16

decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."); *United States v. Ware*, 595 F. App'x 118, 121 (3d Cir. 2014); *United States v. Ramos*, 2019 WL 7194479, at *6 (W.D.N.Y. Dec. 26, 2019) ("the failure to lodge an objection is not ineffective assistance of counsel when there could be a reasonable strategic reason for it.").

Moreover, Petitioner has failed to demonstrate prejudice. Petitioner's argument that the jury might have viewed him as having been previously convicted of the same charges is entirely speculative and does not establish a reasonable probability that the outcome of the trial would have been different but for trial counsel's failure to object and request a curative instruction. *See United States v. Tilley*, 2011 WL 673914, at *2 (W.D. Pa. Feb. 17, 2011) ("Speculation and conjecture are insufficient to establish prejudice.").

For these reasons, the Court will deny Claim Seven for failing to satisfy § 2254(d).

### C. <u>Pending Motion</u>

During the pendency of this proceeding, Petitioner filed a letter Motion Requesting Case Status and an Expedited Decision. (D.I. 24). The Court has concluded that the Claims in the instant Petition do not warrant habeas relief. Therefore, the Court will deny the instant Motion as moot.

### IV. <u>CERTIFICATE OF APPEALABILITY</u>

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In addition, when a district court denies a

habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack,* 529 U.S. at 484.

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability in this case.

## V.      **CONCLUSION**

For the reasons discussed, the Court will deny the instant Petition without issuing a certificate of appealability or holding an evidentiary hearing. The Court will enter an Order consistent with this consistent with this Memorandum Opinion.